UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TREVOR KELLY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:14-cv-05297-RJB-KLS

REPORT AND RECOMMENDATION

Noted for November 6, 2015

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for Supplemental Security Income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On May 26, 2009, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 1999. *See* Dkt. 14, Administrative Record ("AR") 146. That application was denied upon initial administrative review and on reconsideration. *See id.* A hearing was held before an administrative law judge ("ALJ") on September 14, 2010, at which plaintiff, represented by

counsel, appeared and testified as did a medical expert. *See* AR 108-35.

In a decision dated October 4, 2010, the ALJ determined plaintiff to be not disabled. *See* AR 146-53. Upon review, the Appeals Council vacated that decision and remanded this matter for further proceedings, including obtaining evidence from a vocational expert to clarify the affect of his assessed limitations on the occupational base. *See* AR 161-62. A second hearing was held on August 1, 2012, before the same ALJ, at which plaintiff appeared but did not testify, and at which two medical experts appeared and testified. *See* AR 85-106. A supplemental hearing was held on November 26, 2012, at which plaintiff appeared and testified. *See* AR 105, 56-83.

In a decision dated December 6, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 17-32. On January 30, 2014, the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981. On April 15, 2014, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. *See* Dkt. 3. The administrative record was filed with the Court on May 22, 2015, which was supplemented on August 20, 2015. *See* Dkt. 14, 20. The parties have completed their briefing, and thus this matter is now ripe for review by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred:

(1) in rejecting the opinion evidence from examining psychologists, Mahlon Dalley, Ph.D., and Frank Roeskrans, Ph.D.;

(2) in finding plaintiff's mental impairments to be non-severe;

(3) in discounting plaintiff's credibility;

(4) in rejecting the lay witness evidence in the record;

(5) in assessing plaintiff's residual functional capacity ("RFC");

(6) in finding plaintiff to be capable of performing his past relevant work;

and

(7) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy without obtaining evidence from a vocational expert as ordered by the Appeals Council.

For the reasons set forth below, however, the undersigned disagrees that the ALJ erred as alleged, and therefore recommends that defendant's decision be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2dat 1119 n.10.

F.2d 747, 755, (9th Cir. 1989).

Plaintiff contends that the ALJ did not properly consider the opinions of two examining psychologists, Mahlon Dalley, Ph.D. and Frank Rosekrans, Ph.D. In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Id.* Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

A. Dr. Dalley

The record contains four opinions from Dr. Dalley based on psychological evaluations he performed. In April 2008, Dr. Dalley found plaintiff to be markedly limited in a number of social functional areas (*see* AR 500), further opining in relevant part:

> Based on his self-report, behavioral observations, and test results, Mr. Kelly meets the diagnostic criteria for Schizotypal Personality Disorder. At this time, features of Trevor's personality disorder are likely to interfere with his ability to tolerate the pressures and expectations of a normal employment position. He may benefit from referrals for psychotherapy counseling as well as medication management to assist in reducing his level of distress. Even with access to treatment services, it is unlikely that his condition will significantly improve in the next 12 months. Therefore, a referral for SSI track appears appropriate.

AR 505. In November 2008, Dr. Dalley stated plaintiff continued to present as being "rather odd

and peculiar," and that he continued to meet the criteria for a diagnosis of schizotypal personality disorder, which caused moderate to marked limitations in the same areas of social functioning. *See* 563, 568. Dr. Dalley opined that features from his personality disorder were "likely to continue to have a detrimental impact on his ability to initiate or maintain regular employment," that even with treatment that disorder was "not likely to substantially improve," that therefore "a referral for SSI track remain[ed] appropriate and recommended." AR 568.

In August 2009, Dr. Dalley opined that plaintiff was markedly limited in the same social functioning areas, that the features of his personality disorder, as well as his social anxiety and/or phobia, were "likely to interfere with his ability to initiate and be successful in a[n] employment position," that his condition was "not likely" to improve within the next 12 months, and that it was "recommended he be placed on an SSI track." AR 608-09, 613. In October 2010, based on the diagnoses of social phobia and a persecutory delusional disorder in addition to a schizotypal personality disorder, Dr. Dalley provided essentially the same opinion concerning plaintiff's prognosis, ability to work and social functioning as previously, except that with respect to social functioning plaintiff was noted to be markedly to severely limited. *See* AR 663-64, 668.

The ALJ rejected Dr. Dalley's repeated opinions that plaintiff would be unable to work for the following reasons:

> . . . [A]s outlined in detail above, the claimant's psychological symptoms are not supported by the objective medical of record and are not credible. Indeed, . . . Dr. Dalley stated that his opinion was "Based on his self-report, behavioral observations; and test results," yet the "behavioral observations" were not noted by other examiners . . . , including Dr. Dalley himself (i.e., "no indication of loosened associations, tangentially, or circumstantiality in is thought processes") and the claimant produced repeated invalid MMPI-2s in these evaluations, which Dr. Dalley chose to interpret as other than over reporting or exaggeration. The persecutory delusional disorder reported as a diagnosis in October 2010 . . . is given without explanation, and after discussing how symptomatic the claimant is, Dr. Dalley inconsistently discusses referral to DVR. In any event, the undersigned cannot give any

> weight to the opinion of Dr. Dalley that the claimant cannot work from a psychological basis due to his obvious undue reliance upon the subjective allegations of an individual in a setting where he was being evaluated for the specific purpose of determining entitlement to state general assistance benefits, where rules for obtaining benefits are much more relaxed than those used for Social Security disability purposes. His opinions . . . are limited by the fact that [they] are not supported by commensurate clinical findings of abnormality contained in longitudinal medical records, including the opinions of the medical expert, State agency medical consultants, [and examining psychologists], Dr. [Debra D.] Brown, Dr. [John B.] Severinghous, and Dr. [James E.] Bailey.

AR 27. Plaintiff argues the ALJ failed to offer valid reasons for rejecting Dr. Dalley's opinions here. The undersigned disagrees.

Specifically, plaintiff argues there is no evidence that Dr. Dalley overly relied on his self-reporting, asserting he also clearly documented his personal observations. It is true that an ALJ does not provide valid reasons for rejecting an examining psychologist's opinion by questioning the credibility of the claimant's subjective complaints, "where the [psychologist] does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

The majority of Dr. Dalley's personal observations and other clinical findings, however, were largely unremarkable. *See* AR 503-04, 566, 612-13, 667-68; *Batson*, 359 F.3d at 1195 (ALJ need not accept physician's opinion if inadequately supported by clinical findings). Indeed, while plaintiff's speech generally "consisted of bizarre and atypical preoccupations . . . consistent with features of a thought disorder," at no time did he "show any indication of loosened associations, tangentiality, or circumstantiality in his thought processes" either during psychological testing or

the interview itself. AR 566; *see also* AR 612-13, 668; *but see* AR 504 ("At the time of the [April 2008] interview, Trevor's speech was free from delusional thoughts, bizarre, or atypical preoccupations."). Given this lack of objective evidence – and that the bizarre and/or peculiar thoughts and preoccupations Dr. Dalley noted were all based on what plaintiff himself reported – the ALJ did not err in finding Dr. Dalley unduly relied on plaintiff's subjective complaints. *See Ghanim*, 763 F.3d at 1162 ("If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.").

The ALJ's determination that Dr. Dalley unduly relied on plaintiff's subject complaints is boosted by the evidence of malingering and/or symptom exaggeration/over-reporting contained in the record, as revealed by plaintiff's scores on the MMPI-2 testing, including that performed by Dr. Dalley himself. *See* AR 504, 508, 512, 613. Plaintiff points out that with respect to the MMPI-2 testing Dr. Dalley performed, the results of two of those tests were found by Dr. Dalley to suggest plaintiff's profile was valid. *See* AR 567, 668. But as explained by the medical expert at the hearing, the scores plaintiff obtained on the F scale for all of the tests performed by Dr. Dalley were actually indicative of over-reporting and/or symptom exaggeration. *See* AR 98-101, 504, 567, 613, 668. As such, not only are the valid profile conclusions Dr. Dalley made called into question by this, but so too is his interpretation of the one invalid profile he believed to be "a plea for help, rather than an attempt to 'fake bad' for secondary gain." AR 504.

The ALJ also permissibly pointed to the other medical opinion evidence in the record, which overwhelmingly disagreed with Dr. Dalley's conclusions. *See* AR 94-104, 507-13, 579-82, 657-660, 733-37; *Batson*, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if inadequately supported "by the record as a whole"). The undersigned does agree

with plaintiff that the ALJ erred in rejecting Dr. Dalley's opinions on the basis that they were based on evaluations performed in a setting where plaintiff "was being evaluated for the specific purpose of determining entitlement to state general assistance benefits, where rules for obtaining benefits are much more relaxed." AR 27. First, absent "evidence of actual improprieties" on the part of the medical source – of which there is none here – the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. *See Lester*, 81 F.3d at 832. Second, the ALJ pointed to no evidence that the rules for obtaining state benefits are in fact much more relaxed than for obtaining Social Security disability benefits, or that even if they are this fact improperly influenced Dr. Dalley's findings and conclusions. Nevertheless, any error here was harmless, as the ALJ provided other, valid reasons for rejecting those conclusions.[2]

B. Dr. Rosekrans

In July 2012, Dr. Rosekrans diagnosed plaintiff with continuous schizophrenia, paranoid type, a schizotypal personality disorder and borderline intellectual functioning, and opined that he was moderately to severely limited in a number of mental functional arears. *See* AR 803-04. The ALJ rejected that opinion largely on the basis that as did Dr. Dalley, Dr. Rosenkrans seemed to take plaintiff's statements "at face value," while plaintiff was not credible regarding his subjective complaints and alleged symptoms. AR 27. Plaintiff argues the ALJ unfairly assumes Dr. Rosekrans relied on his own self-reporting to a greater degree than his own personal observations. But again as with Dr. Dalley, the actual observations Dr. Rosekrans provided were for the most part unremarkable (*see* AR 804-05), and thus the ALJ was not remiss in rejecting his opinion on this basis. *See Batson*, 359 F.3d at 1195.

---

[2] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

II. The ALJ's Step Two Determination

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

The ALJ in this case found plaintiff's alleged mental health impairments caused no more than a *de minimis* limitation on his ability to do work-related activities, stating that there was "no medical evidence of any such psychological abnormality that would account for [his] allegations of disability." AR 25. Specifically, the ALJ pointed to the majority of the medical opinions in the record, in which it was felt plaintiff did not have "any psychiatric diagnosis that would preclude

the ability to work from a psychological standpoint." AR 26-27; *see also* AR 97, 508, 513, 582, 660, 737. Plaintiff argues this finding is erroneous, given the opinions of Dr. Dalley and Dr. Rosekrans. As discussed above, though, the ALJ did not err in rejecting those opinions. Plaintiff also cites treatment records from medical and mental health providers to support his argument, but none of that evidence consists of objective clinical findings – as opposed to plaintiff's own self-reporting – indicating the presence of actual functional limitations that would have more than a *de minimis* impact on his ability to work. *See* Dkt. 16, pp. 14-15 (citing AR 625-26, 657, 659-60, 680, 741, 745, 814, 818-19); SSR 85-28, 1985 WL 56856 *4 ("At the second step of sequential evaluation , then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").[3]

III. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

[3] Plaintiff also points to his own testimony and the lay witness statements of his significant other to further support his argument here. But even if it were proper to consider such testimony and statements at step two of the sequential disability evaluation process, as discussed below, the ALJ did not err in discounting both plaintiff's credibility and the lay witness evidence in the record, and therefore was under no obligation to adopt any of the allegations either plaintiff or his significant other made concerning his symptoms and limitations.

testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ in this case provided several reasons for finding plaintiff to be not fully credible, including as discussed above the evidence of symptom exaggeration/over-reporting in the record, as well as the fact that plaintiff sought "little treatment" for his allegedly disabling symptoms and impairments, and his daily activities. *See* AR 25-26. These reasons were proper. *Tonapetyan*, 242 F.3d at 1148 (claimant properly discredited in part based on "her tendency to exaggerate"); *Smolen*, 80 F.3d at 1284 (ALJ may consider claimant's daily activities); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment can cast doubt on sincerity of claimant's credibility).

Plaintiff argues it is not clear how the daily activities the ALJ listed are inconsistent with his alleged mental health symptoms and limitations. To the extent that may be true, however, at the very least those "very physically active" activities the ALJ listed (AR 26), certainly could be said to call into question plaintiff's credibility concerning his alleged physical impairments and limitations. Even if it can be said that the ALJ did err here, furthermore, he still gave two other

valid reasons for discounting plaintiff's credibility as just discussed. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

IV. The ALJ's Rejection of the Lay Witness Testimony in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

With respect to the lay witness evidence in the record, the ALJ found as follows:

> The undersigned has carefully considered the Third Party Statements . . . by the claimant's significant other, Jamie Zaborac. Both statements describe significant difficulties with activities of daily living and limited ability to help around the house due to shoulder and back pain. Ms. Zaborac states he can lift 10-20 pounds, walk 2 blocks, and has difficulty with concentration, understanding, and completion of tasks. The observations of Ms. Zaborac that he has "extreme difficulties" due to delusions and pain in the back, shoulder and wrist are outweighed by the opinions and evidence in the longitudinal record that suggests that the claimant is disability seeking and that his true functioning abilities are not as limited as thought by his significant other.

AR 30. Plaintiff argues these are not germane reasons for discounting Ms. Zaborac's statements. An ALJ may discount lay testimony, however, if it conflicts with the objective medical evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis*, 236 F.3d at 511; *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Given that as discussed above plaintiff has failed

to show the ALJ committed any harmful error in evaluating the medical evidence in the record concerning his mental impairments and limitations, and that he does not argue the ALJ erred in regard to the medical evidence concerning his physical impairments and limitations, the undersigned finds no error here.

V. The ALJ's Assessment of Plaintiff's RFC

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.* It thus is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Here, the ALJ found plaintiff had the residual functional capacity to perform the full range of medium work. *See* AR 28. Plaintiff argues "[h]ad the ALJ properly considered the evidence related to [his] health conditions, he would have had to include more significant limitations in formulating his RFC" assessment. Dkt. 16, p. 18. As discussed above, however, plaintiff has failed to show the ALJ committed harmful error in evaluating the medical or lay

witness evidence in the record, or in finding plaintiff to be less than fully credible concerning his own subjective complaints. Accordingly, here too the undersigned finds no error.

VI. The ALJ's Step Four Determination

At Step four of the sequential disability evaluation process, the ALJ found in relevant part:

> The undersigned notes that the prior decision found that the claimant had no past relevant work. However, further review of this record indicates the claimant worked as a donation attendant for Goodwill for four months . . . , and earnings records indicate he earned $4,162.02 for that four-month period in 2003, which averages out to well over substantial gainful activity wages of $800 per month for that calendar year. Indeed, the State Agency found that the claimant was able to perform his past relevant work as donations attendant . . . , and the undersigned adopts that finding here as well. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed.

AR 31. Plaintiff argues this finding is in error, because the ALJ failed to establish he performed the above job long enough for him to learn how to do it or to consider whether it constituted a failed work attempt, given his testimony that he could perform that job "for only four months, struggled around others, and was eventually terminated for 'overreacting to certain people' and odd behavior," even though his earnings may have been at the substantial gainful activity level. Dkt. 16, p. 4 (quoting AR 64 and citing 20 C.F.R. § 416.965(a), § 416.974(a)(1)). Plaintiff has the burden to show she is unable to perform her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

While defendant asserts "[t]he Commissioner does not concede error with regard to step four," she offers no specific argument to counter the issues plaintiff raises here. Dkt. 21, p. 3 n.2.

Further, even though in light of plaintiff's credibility issues and his failure to establish harmful error in the ALJ's evaluation of the medical and other evidence in the record, any showing that he likely stopped performing his past relevant work because of his mental health impairments is largely lacking here, the undersigned notes the ALJ did not determine if plaintiff performed that work long enough to learn how to do it. That said, the undersigned agrees with defendant that any error committed by the ALJ in this regard or otherwise at step four was harmless in light of his alternative step five finding discussed below. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless in light of the ALJ's alternative finding at step five.").

VII. ALJ's Failure to Obtain Evidence from a Vocational Expert and Finding at Step Five

In remanding this case in April 2012, the Appeals Council expressly directed the ALJ to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." AR 162. Plaintiff argues that by not obtaining such evidence at the hearing, the ALJ failed to comply with the order of the Appeals Council and therefore erred. The Commissioner's regulations provide that on remand, the ALJ "shall take any action that is ordered by the Appeals Council *and* may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b) (emphasis added). Here, although the ALJ did not obtain vocational expert evidence as ordered by the Appeals Council, he did take other action not inconsistent with the Appeal's Council's order's stated purpose – i.e., to clarify the effect of plaintiff's limitations on the occupational base – "thereby discharging [his] duty to 'take any action that is ordered by the Appeals Council." *Widman v. Astrue*, 302 Fed. Appx. 744, 746 (9th Cir. 2008) (quoting 20 C.F.R. § 404.977(b)).

If a claimant cannot perform his or her past relevant work, at step five of the sequential

disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett*, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. The Grids may be used if they "*completely and accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101 (emphasis in original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." *Id.* (emphasis in original).

If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[9] *Ostenbrock*, 240 F.3d at 1162; *see also Tackett*, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). Proper use of the Grids thus depends in each case upon the nature and extent of the claimant's impairments and limitations. For example, "[t]he ALJ *must* apply the grids if a claimant suffers only from an exertional impairment." *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 (9th Cir. 1989) ("In such cases, the rule is simple: the grids provide the answer.") (emphasis added). In this case, the ALJ found in the alternative that given plaintiff's RFC, age, education, and work experience, a finding of "not disabled" was directed by Grid Rule 203.29. AR 31-32.

As discussed above, the ALJ did not err in finding plaintiff had the RFC to perform the full range of medium work. Accordingly, given that plaintiff properly was found to suffer from an exertional impairment only, the ALJ was *required* to apply the Grids rather than obtain the

---

[9] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 416.969a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 416.969a(c)(1).

testimony of a vocational expert. Indeed, the Appeals Council's order appears to anticipate this possibility given its reference to SSR 83-14, which provides that "[w]here a person *cannot be found disabled based on strength limitations alone*, the rule(s) which corresponds to the person's vocational profile and maximum sustained exertional work capability . . . will be the starting point to evaluate what the person can still do functionally," which then may lead to the need for vocational expert testimony. *See id.*, 1983 WL 31254, at *3-; AR 162. That is, the Appeals Council appears to have been concerned primarily with ensuring the ALJ properly determined the available occupational base, rather than the specific manner through which that determination was made. As such, here too no error has been shown.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 6, 2015**, as noted in the caption.

DATED this 19th day of October, 2015.

Karen L. Strombom
United States Magistrate Judge